**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al., Plaintiffs,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

No. 13731-3.

United States District Court
W. D. Missouri, W. D.
March 26, 1962.

Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, Mo., Kreindler & Kreindler, and Cohen & Weiss, New York City, for plaintiffs.

Stinson, Mag, Thomson, McEvers & Fizzell, by Dick H. Woods, Kansas City, Mo., Chadbourne, Parke, Whiteside & Wolff, by Harold L. Warner, Jr., New York City, for defendant.

DUNCAN, Chief Judge.

Plaintiff, an unincorporated association, by and through their representative officers, individually and as representatives of the Air Line Pilots employed by Trans World Airlines, Inc., instituted this suit against the defendant seeking a mandatory injunction requiring the defendant to enforce the arbitration award of the TWA-ALPA System Board of Adjustment, and the matter before the court now is for a preliminary injunction.

Plaintiffs allege that the action arises under the Act of May 20, 1926, 44 Stat. 577; 49 Stat. 1189 as amended, U.S.C.A. Title 45 §§ 151 through 188, known as the "Railway Labor Act", and seek to confer jurisdiction upon this court under the provisions of Title 28 §§ 1331–1337 U.S.C.A., and Title 45 §§ 151 through 188.

The evidence reveals that on May 22, 1959, the Air Line Pilots in the service of Trans World Airlines, Inc., and represented by the Air Line Pilots Association, entered into a collective bargaining agreement with the defendant, which agreement was supplemented by certain Memorandum of Understanding. The agreement dealt in part with second officers in the service of Trans World Airlines, Inc., and provided:

"2. That such Second Officer shall be qualified to provide relief at all required flight crew positions

except that of pilot in command. Such qualifications shall be the minimum copilot qualifications as required by TWA including at least a commercial pilot's license, instrument rating, and the ability to fly the aircraft. Further, he will be given the opportunity to secure the training and the use of Company facilities, when available, on his own time, to secure Flight Engineer certificate. The Company shall not be required to conduct a flight solely to accommodate the above requirements.

"TRAINING

"3. That a Second Officer who does not possess the required qualifications as herein stated shall be offered the opportunity by the Company to acquire such qualifications or ratings within a reasonable period to be hereinafter agreed upon and shall be otherwise provided with the necessary training to perform the duties assigned to him."

Plaintiffs contend that the defendant has failed to comply with the terms of the agreement. The Air Line Pilots Association, which will hereafter be referred to as "ALPA", submitted a grievance to the TWA-ALPA System Board of Adjustment charging the defendant with the violation of the bargaining agreement and Memorandum of Understanding, because of TWA's failure to train and qualify such second officers in the service of TWA as required by the provisions of the bargaining agreement and as supplemented by the Memorandum of Understanding.

On September 13, 1961, pursuant to a hearing by the System Board of Adjustment, it was determined by the Board that TWA had failed to comply with the bargaining agreement as supplemented by the Memorandum of Understanding, and made the following findings, which were thereafter known as the "Kelliher Award":

"It is the finding of this Board that within thirty (30) days after the rendition of this Award that the Company shall inaugurate and place in effect a program to provide the Second Officers with the opportunity to secure the training and use of Company facilities to secure a Flight Engineer's certificate. This program shall be arranged so that all present Second Officers who expressly elect to secure such training shall be given an opportunity to complete this training within a two-year period from the inauguration of said program.

"All new Second Officers who expressly elect to secure such training to secure a Flight Engineer's certificate should be given an opportunity to complete this training concurrent with their regular Second Officer training."

It is the contention of the ALPA that it was the duty under the "Kelliher Award" to afford the opportunity for training, using the facilities of the defendant at its air base in Kansas City on jet-propelled airplanes.

There is no contention on the part of defendant that the "Kelliher Award" is not binding upon both ALPA and TWA. Defendant's position is that it is complying with the Award, and the evidence reveals that within thirty days of October 6, 1961, it had inaugurated and placed in effect a program to provide Second Officers the opportunity to obtain training to secure a Flight Engineer's certificate.

The first class began November 20, 1961, and by February 21, 1962, three classes had been completed. During that period 114 Second Officers out of approximately 225 TWA second officers had been offered the opportunity to take such training, and approximately 25% of those offered the training had elected to take it.

The flight portion of the training was contracted by Trans World Airlines, Inc., to American fliers of Ardmore, Oklahoma. All of the Second Officers' expenses incident to their training there

was borne by the defendant. Their training was conducted in piston type planes and they received no training in jet type planes.

It is plaintiffs' contention that requiring applicants for such training to go to Oklahoma was a violation of the terms of the Award and that the failure to afford training in jet propelled types of planes was also a violation of the terms of the Award.

The Second Officer apparently has little function to perform and his services are confined to riding behind the captain of the jet propelled planes. It is his duty and responsibility to take over in the event of the disability of the captain, the First Officer or the Flight Engineer should he also become disabled or unable to perform his function.

Defendant states that it proposes in the future to carry out the terms of the Award. It has entered into a contract with the Alaskan Air Lines where it will afford the training facilities for the applicants in the future, to be carried out in the same manner as was carried out in Oklahoma. It is defendant's contention that the flight engineer's certificate requirements do not require training only on jet type aircraft.

There is also a tremendous difference in cost of training to the defendant. Flight training on jet propelled planes entails a cost of approximately $1000.00 per hour, whereas training on Constellation aircraft or piston type aircraft costs $150.00 per hour. I find nothing in the Award or in the evidence indicating that it is necessary that the training be confined or limited to the jet type plane.

It is further the contention of the defendant, and it is borne out by the evidence, that under its agreement with the flight engineer group, it cannot put a jet plane into flight without a flight engineer aboard, and that flight engineers will not permit such training while they are in the performance of their duties on such jet propelled planes. Defendant therefore faces the dilemma of either attempting to comply with the ALPA requirements for training Second Officers, or a strike on the part of such flight engineers, thus tying up their entire operation because of their refusal to permit such training.[1]

Without going into great detail concerning the contentions of the ALPA with respect to the necessity for such training on the part of their Second Officers, the above facts briefly state the factual situation that is before the Court.

To comply with the request of plaintiffs in the enforcement of the Award would require an interpretation of the Award—is the training to be confined to the facilities of the defendant in the Kansas City area, and must the training be given in jet propelled planes rather than piston type aircraft. The Award is silent as to both of these questions.

Assuming that the court does have jurisdiction, the plaintiffs have failed to support with their evidence the contention that the defendant is not substantially complying with the requirements of the Award. However, it is my view that under the law, that this court is without jurisdiction to hear and determine that question.

The "Railway Labor Act" was enacted in 1926. § 153(p) provides in part:

"If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal op-

---

1. It appears from the affidavit of Harry Feehan, Director of Labor Relations, for defendant, that on February 23, 1962, the Flight Engineers International Association, AFL–CIO, TWA Chapter, filed an action in the United States District Court for the Southern District of New York against TWA, Inc., and the officers thereof and the Air Line Pilots Ass'n, seeking to restrain compliance with or enforcing the TWA-ALPA System Board of Adjustment Award rendered October 6, 1961, referred to as the "Kelliher Award".

erating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises."

This provision of the statute applies to carrier by rail only. Air carriers were not brought within the provisions of the Act until the revision of 1936, 45 U.S.C.A. § 181 provides:

"All of the provisions of sections 151, 152, and 154–163 of this title are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States Government, and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service."

The next paragraph (182) provides:

"The duties, requirements, penalties, benefits, and privileges prescribed and established by the provisions of sections 151, 152 and 154–163 of this title shall apply to said carriers by air and their employees in the same manner and to the same extent as though such carriers and their employees were specifically included within the definition of 'carrier' and 'employee', respectively, in section 151 of this title."

■ It will be noted that in the revision extending the Act to air carriers, all of its provisions except § 153 were referred to and made applicable to air carriers. Significantly it left out the section conferring jurisdiction on the District Court to enforce the award of the Adjustment Board. Certainly if the Congress had intended that the District Court was to enforce the provisions of the Adjustment Board with respect to air carriers in the same manner as it applies to other types of carriers, it would not have omitted this very important section.

If we do not find jurisdictional authority under the Act as it is made applicable to air carriers, then we must look to other sections of the statute to determine that question.

■ It is the contention of the plaintiffs that jurisdiction is conferred upon this court under the general jurisdictional statute, § 1331–1337 Title 28 U.S. C.A. United States courts are courts of limited jurisdiction and have such authority only as is conferred upon them under the Constitution and the Act of Congress.

■ The dispute between the parties here clearly involves a controversy growing out of a contractual relationship between the plaintiffs and the defendant, and in the opinion of the court, does not involve any Federal question. There is no allegation, nor does the evidence reveal that there is diversity of citizenship, nor does it arise under the Constitution or laws or treaties of the United States.

There is no uniformity of opinion on this question, particularly in the lower courts. A similar question was before the court in Bates v. Northwest Airlines, Inc., D.C., 171 F.Supp. 273. Apparently the court in that case accepted jurisdiction. The opinion does not reveal that the question was raised by either party in that dispute. However, in its opinion that court states:

"Jurisdiction of this Court over this action can only be predicated upon 45 U.S.C.A. § 153 which, by virtue of 45 U.S.C.A. §§ 184–185, is applicable to the award of an Air Carrier System Board of Adjustment such as the one rendering the award herein."

I cannot agree with my distinguished colleague who wrote this opinion, as to the applicability of § 153, because, as heretofore stated, it was not made a part of the revision bringing air carriers under the Railway Labor Act.

The question of whether or not the District Court had jurisdiction either un-

der § 153 or § 1331 et seq., was before the court in International Ass'n of Machinists, AFL–CIO v. Central Airlines, Inc., 295 F.2d 209 (5th Cir.). That court, in a divided opinion, came to the conclusion that it had jurisdiction under neither section of the statute. [Certiorari granted by the Supreme Court February 26, 1962, and now pending].

In the International Ass'n of Machinists case, the court re-affirmed its former holding in Metcalf v. National Airlines, 271 F.2d 817 (1959), stating:

"This Court squarely held that in non-diversity cases an airline system board award is not enforceable in the federal courts under Section 184."

Aside from any other question involved in this controversy, it is my conclusion that this court is without jurisdiction, and the Plaintiffs' Motion for Preliminary Injunction is overruled, and plaintiffs' Complaint dismissed.

